USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: December 3, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

UNITED STATES OF AMERICA

*-against-*

ALBERT BALDEO,

*Defendant.*

---------------------------------------------------------X

S1 13 Cr. 125 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

On August 11, 2014, after a two-week trial, a jury convicted Defendant Baldeo of seven counts of obstructing justice. Defendant moves for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29, arguing that insufficient evidence existed to support a guilty verdict or to establish venue. Alternatively, Defendant moves for a new trial, pursuant to Fed. R. Crim. P. 33, arguing that his Fifth and Sixth Amendment rights were violated by giving a coercive supplemental jury instruction and excluding the public from the *voire dire* portion of the trial. For the reasons below, Defendant's motions are DENIED.

## DISCUSSION

### I. Motions for Judgment of Acquittal

#### A. Legal Standard

When considering a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court must credit "every inference that the jury might have drawn in favor of the government," *United States*

*v. Temple*, 447 F.3d 130, 136-37 (2d Cir. 2006) (internal quotations omitted), and review all the evidence "in conjunction, not in isolation," *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (citing *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008)). The Court must also "be careful to avoid usurping the role of the jury," *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003), particularly when reviewing a conspiracy conviction "because a conspiracy by its very nature is a secretive operation, and it is a rare case 'where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel,'" *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992) (quoting *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980)).

### B. Application

#### 1. Sufficient Evidence Existed to Support a Guilty Verdict

Defendant argues that insufficient evidence existed to support a guilty verdict beyond a reasonable doubt. He contends that the testimonial evidence adduced was equally consistent with guilt and innocence and that reasonable doubt therefore existed. *See United States v. Coplan*, 703 F.3d 46, 69 (2d Cir. 2012). Defendant's argument is based on a fundamental misreading of the record and is rejected.

In support of his argument, Defendant provides his own narrative of the testimonial evidence by paraphrasing and selectively quoting witnesses. For example, Defendant recounts the testimony of Gagendra Pooran as follows:

> Count Seven is based on a single, fleeting conversation between Gagendra Pooran and Mr. Baldeo, at Mr. Pooran's office, in the spring of 2011. Gagendra Pooran described it as 'a short conversation' of 'about five minutes,' where Baldeo told Gagendra about the investigation and asked him to talk to his father about not speaking to the FBI. (Tr. 1217, 1225, 1228.) Mr. Gagendra further testified that he was '[not] intimidated or threatened' by Mr. Baldeo in any way. (Tr. 1225.) That was the last and only meeting and conversation between them. (Tr. 1228-29.)

Def. Mem. Supp. 7. This summary of Mr. Pooran's testimony omits key details about his interactions with Defendant. In reality, Mr. Pooran testified that Defendant showed up to his office unannounced and waited in a conference room for Mr. Pooran's arrival. Tr. 1215:11-25. When Mr. Pooran arrived, he went to the conference room to meet Defendant. Tr. 1216:4. Defendant proceeded to instruct Mr. Pooran to warn his father not to speak to the FBI or else "[they] could all get in trouble." Tr. 1216:25-1217:7. Mr. Pooran understood this to mean that he, his father, and Defendant could all get in trouble if Mr. Pooran's father spoke to the FBI. Tr. 1217:10. Defendant was concerned about whether there were cameras recording their meeting and suggested a follow up meeting in a Key Foods parking lot. Tr. 1217:14-1218:8. After Mr. Pooran failed to meet Defendant, he received multiple calls from "somebody Guyanese." Tr. 1219:15-24.[1] Moreover, not only is Defendant's rendition of the testimonial evidence misleading, but accepting it would require the Court to engage in the precise analysis prohibited at this stage of review. *See United States v. Cunningham*, 723 F.2d 217, 232 (2d Cir. 1983) (the Court cannot "set aside [a] guilty verdict simply because [it] would have reached a different result if [it] had been the fact-finder").

Defendant's argument also ignores the jury's consideration of the non-testimonial evidence adduced, for example: the false allegations of child abuse against Gobin Pooran, Gov't Exs. 200, 203-04; the documents falsely indicating Defendant withdrew from the New York City Campaign Finance Board's matching funds program, Gov't Exs. 405, 406; and, the letter sent to Mr. Schreiber threatening sanctions, Gov't Ex. 501. Moreover, Defendant fails to acknowledge that the jury was specifically instructed as to his theory of the case:

---

[1] Defendant also recounts the testimonial evidence relating to Counts Four, Five, Six, Eight, Nine, and Ten. In each case, Defendant's accounts exhibit similar cherry-picking from the record and fail to conform with the testimony delivered in Court.

> Mr. Baldeo claims that he did not act to obstruct justice but, rather, that he tried to communicate to the identified witnesses their legal rights to remain silent and the right to representation of counsel. Mr. Baldeo asserts that he never intended to act in a corrupt, threatening, or intimidating manner when he met with any of these witnesses.

Tr. 1832:4-9.

Finally, Defendant argues that the Court should enter a judgment of acquittal because Defendant was "acquitted of the crime charged, but convicted of seeking to obstruct the investigation of the crime he never committed." Def. Mem. Supp. 1. Though the argument initially sounds appealing, it has no legal substance.[2] Defendant's obstruction of justice conviction stands on its own. A conviction of obstructing justice by impeding an investigation does not require that the investigation itself lead to a conviction; rather, an obstruction charge has its own elements, elements which the jury found to exist based on the evidence presented.

Therefore, considering the evidence "in conjunction, not in isolation," *Persico*, 645 F.3d at 104, Defendant has failed to demonstrate that the evidence was "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt," *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (internal quotations omitted). Accordingly, Defendant's claim of insufficient evidence is DENIED.

### 2. The Jury Properly Found Venue in this District

Next, Defendant argues that it was an error for the Court to instruct the jury that it could find venue based on 18 U.S.C. § 1512(i) for Counts Four, Five, Six, Eight, Nine, and Ten.[3] Defendant claims the venue instruction was improper because § 1215(i) was not expressly cited

---

[2] In his summation, Defendant admitted that he provided the straw donors with false money orders along with false documents, but not with the intent to obtain city funds, as alleged in this indictment, but rather to avoid a penalty for not repaying his loan to the campaign prior to election day. In other words, his crime was not the one charged in the indictment.

[3] Although Defendant attempts to challenge venue based on insufficient evidence pursuant to Rule 29, the substance of Defendant's challenge alleges that the Court erred in its venue-related jury instructions. *See* Def. Mem. Supp. 16.

or "charged" in the superseding indictment, dated July 23, 2013. Since § 1512(i) was not "charged" in the indictment, the argument contends that proof of venue consistent with 18 U.S.C. § 1512(i) constructively amends the indictment. Defendant's argument must be rejected.

There is no legal support for Defendant's argument that an indictment must charge 18 U.S.C. § 1512(i) in order to prove a violation of 18 U.S.C. § 1512(b)(3) (Defendant's obstruction of justice charge). The structure of 18 U.S.C. § 1512 confirms this analysis. The first four subsections of the statute define the crimes of tampering with witnesses, victims, or informants. *See* 18 U.S.C. § 1512(a)-(d). The remaining seven subsections, 18 U.S.C. § 1512(e)-(k), deal not with the prescribed methods of tampering, but rather with proof, defenses, and punishment. At issue here is 18 U.S.C. § 1512(i), which details where "a prosecution under this section may be brought," i.e. where venue is appropriate. The elements of the crime charged here are defined in 18 U.S.C. § 1512(b)(3); the venue requirements are outlined in 18 U.S.C. § 1512(i). Since venue requirements are not elements of a crime, they do not need to be set forth in an indictment. The indictment's reference to 18 U.S.C. § 1512(b)(3) satisfies Defendant's Fifth Amendment right to be "informed of the nature and cause of the accusation," *United States v. Gonzales*, 686 F.3d 122, 126 (2d Cir. 2012).

In any event, since Defendant did not object to the venue instruction before the jury retired, his argument is forfeited. According to Fed. R. Crim. P. 30(d), "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." At the outset of the charging conference, the Court instructed the parties as follows:

> What we have now is the charge which reflects the draft charge in February, your comments updating your position on the draft, which has been incorporated to the extent I thought it was appropriate, and now we have the charge. So if you're objecting to

> anything here in the charge, I think have you [sic] to make that known to me, but your objections as to other matters are preserved.

Tr. 1572:3-10. Neither side raised any objections to the venue instructions during the charging conference; and neither side objected to the venue charge given to the jury at the final sidebar before the jury retired. Tr. 1847:4-1848:3; *see United States v. Crowley*, 318 F.3d 401, 412 (2d Cir. 2003) (holding that to preserve an objection for appeal, the party must specifically object to the instruction actually given to the jury because "so many events at trial could lead the party to change its position").

Accordingly, Defendant's motion is DENIED.

## II. Motions for a New Trial

### A. Legal Standard

When considering a motion for a new trial pursuant to Fed. R. Crim. P. 33, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). While the Court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," *id*, a new trial should only be granted in "extraordinary circumstances," *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). In order to grant a new trial, the Court must have "'a real concern that an innocent person may have been convicted.'" *United States v. Canova*, 412 F.3d 331, 349 (2d Cir 2005) (quoting *Ferguson*, 246 F.3d at 133).

### B. Application

#### 1. The Supplemental Jury Instruction was not Coercive

After seven hours of deliberations, the Court received the following note from the jury at 6:30 p.m. on Friday, August 8, 2014: "We have reached a verdict on three counts. The remaining

seven counts we are 11 to one and struggling to get a unanimous vote. We would like some guidance."[4] After consulting with the parties, the Court gave the following instruction to the jury:

> We have your note which concludes: We would like some guidance. Yesterday, in the charge which you have in the jury room, I gave you instructions on unanimity and it is at pages 47 and 48 of the jury charge that you have in the jury room. Let me say this to answer your questions: Your verdict has to be unanimous. It is your duty to talk with each other about the evidence and make every reasonable effort you can to reach a unanimous agreement. Listen carefully and respectfully to each others' views and keep an open mind as you listen to what your fellow jurors have to say. Do not hesitate to change your mind if you are convinced that the other jurors are right and your original position was wrong. But never change your mind just because other jurors see things differently or just to get this case over with.[5]

Tr. 1868:25-1869:14. Defendant argues that this supplemental instruction was "coercive" and

---

[4] All parties agree that the Court repeatedly instructed the jury not to divulge the breakdown of their vote.

[5] This supplemental instruction was an abbreviated version of the jury instruction given a day earlier. It provided in relevant part, as follows:

> Your decisions must be unanimous, but you are not bound to surrender your honest beliefs concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard for sympathy, prejudice or favor for either party, and adopt that conclusion that in your good conscience appears to be in accordance with the truth.
>
> ....
>
> Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his conscientious beliefs solely for the purpose of returning a unanimous verdict. Your verdict must be based solely upon the evidence introduced at trial or the lack of evidence. It is improper for you to consider any personal feelings you may have about the Defendant's race, religion, national origin, gender, or age. The parties in this case are entitled to a trial free from prejudice and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence before you.
>
> ....
>
> It is your duty as jurors to consult with one another and to deliberate with a view towards reaching an agreement. Each of you must decide the case for him or herself, but do so only after an impartial discussion and consideration of all the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change an opinion if you become convinced it is erroneous. But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinions of your fellow jurors.

Jury Instruction, 49-50. This is a correct statement of law, and counsel did not object when this charge was given.

violated his Fifth and Sixth Amendment rights to a fair and impartial jury because: (1) the Court should have taken a partial verdict; (2) the Court should have included certain language in its supplemental instruction; and (3) the Court should not have issued a supplemental instruction. Each argument is based on an inaccurate and selective reading of the record and is rejected.

First, Defendant is mistaken when he claims that, in response to the jury's note, he "requested" a partial verdict because the jury was "hung." Def. Mem. Supp. 19. This is a false assertion; Defendant never made such a request. Had such a request been made, it would have been denied: the trial lasted nine days and the jury had only deliberated for seven hours before sending the note. It is a complete misreading of the note to argue that the jury was "hung." The jury had agreed on some counts and was "struggling on others." Surely, this was not the first jury to encounter difficulty in reaching a verdict.

Next, Defendant claims that the Court issued a "coercive" supplemental instruction "[o]ver defense counsel's objection." Def. Mem. Supp. 19. At no point in the proceeding did Defendant argue that the proposed supplemental instruction was "coercive"; the word "coercive" is completely absent from the record. As a cure for its absence, Defendant simply creates "coercive" and inserts that word into an unfinished sentence. *Compare* Tr. 1868:12-13 ("anything that goes on form here on out is going to be --"), *with* Def. Mem. Supp. 19 ("anything that goes on from here on out is going to be [coercive]"). In reality, Defendant's only request concerning the specific language of the supplemental instruction was for the Court to "include the lines that [the jury] should not surrender a consciously held conviction." Tr. 1865:7-8. This request was dealt with in the Court's supplemental instruction to the jury: "never change your mind just because other jurors see things differently or just to get this case over with." Tr. 1869:12-14. The inclusion of this language destroys Defendant's argument that the instructions

"left little room for the sole hold-out juror to do anything but capitulate her view, or face the daunting task of convincing all eleven jurors on the other side."[6] Def. Mem. Supp. 20. The final sentence of the supplemental instruction makes it clear that each juror must make up his or her own mind, and that avoids the difficulties posed by traditional *Allen* charges. *See United States v. Robinson*, 560 F.2d 507, 517 (2d Cir. 1977) (*en banc*) ("The propriety of an *Allen*-type charge depends on whether it tends to coerce undecided jurors into reaching a verdict by abandoning without reason conscientiously held doubts."); *see also United States v. McDonald*, 759 F.3d 220, 224 (2d Cir 2014) (upholding a supplemental jury instruction because it "left open the possibility that the jurors would have principled disagreements that would prevent them from reaching a unanimous verdict").

Finally, to the extent which Defendant has objections regarding the general issuance of the supplemental instructions, such objections are forfeited. Fed R. Crim. P. 30(d); *see United States v. Ghailani*, 733 F.3d 29, 52 (2d Cir. 2013) ("However, when a defendant, as here, objects only generally to the issuance of a jury instruction, and not to the specific language used by the District Court, the objection to the formulation of the charge is not preserved.").

Accordingly, Defendant's motion is DENIED.

**2. Members of the Public Were Not Excluded**

Defendant's final argument, that his Sixth Amendment right to a public trial was violated by the Court's "effective exclusion" of the public during the *voire dire*, is a fiction, and a risible one at that. While the public should not be excluded from the *voire dire*, *Presley v. Georgia*, 558 U.S. 209 (2010), the application of this principle requires that some members of the public be

---

[6] Furthermore, there is no indication of the gender of the holdout; we do not know whether it was a "her" or a "him." Moreover, stating that "[s]he chose the former on the next day of deliberations," Def. Mem. Supp. 20, is misleading because the next day of deliberations occurred the following Monday—almost 60 hours after the Court's supplemental instruction.

excluded.

Before the *venire* panel entered the courtroom, the following exchange took place:

| | |
|---|---|
| The Court: | Now we have a number of spectators sitting here. Are they with the government? |
| Mr. Richenthal: | One is Special Agent Jeffrey Grove of the FBI. Two are present interns with the U.S. Attorney's Office, the two gentlemen who just raised their arms. And one, the woman in the front row, is a former intern with the U.S. Attorney's Office. I am not aware who the others are. |
| The Court: | Who are the others? |
| A Spectator: | We are interns of the Campaign Finance Board. |
| The Court: | I don't want you sitting with the jurors when they arrive. I don't know where you can sit or stand, but I like to keep the jurors separate so nobody is talking to the jurors. So if you all want to sit in one row or two rows. How many jurors do we have? |
| The Deputy Clerk: | 60. |
| The Court: | We have 60 jurors coming up. So if you would all consolidate your space and sit in one area. |

Tr. 6:5-22. As this exchange demonstrates, at no point was any individual asked to leave the courtroom; instead, members of the public were merely asked to "consolidate [their] space and sit in one area." Tr. 6:22. This request is different from the directions at issue in cases cited by Defendant. *Compare* Tr. 6:21-22 ("So if you would all consolidate your space and sit in one area"), *with United States v. Gupta*, 699 F.3d 682, 686 (2d Cir. 2012) ("I requested that individuals who were not *venire* panel members leave the courtroom during the jury selection"), *and United States v. Seabrook*, 571 F. App'x 27, 29 (2d Cir 2014) ("I'm going to have to ask our

visitors to vacate the seats so that we have a place for the jury"). *Seabrook* was decided one month before Defendant's trial and the Court was fully aware of its import. The Court, however, did not need to change its practice in light of the decision, since it has never excluded the public from the *voire dire* process.[7]

The Court's explicit direction to "sit in one area" supports but one conclusion: no one left. The colloquy took place in open court, with Defendant and Defendant's counsel present. No one objected; and no one stated that members of the public were leaving. Moreover, Defendant has not provided any affidavits from any individuals who felt excluded, *cf. Seabrook* 571 F. App'x at 29 (acknowledging that the defendant submitted affidavits from three family members who were excluded from the *voire dire*), and his request for additional time to "investigate" this issue further is denied.

Surely, it was appropriate to both seat the *venire* panel while the *voire dire* was in progress and keep the *venire* panel separate from others present in the courtroom. Since no one was excluded, Defendant's motion must be DENIED.

---

[7] This is evidenced by the nearly identical comments made during Defendant's first trial on February 10, 2014—three months prior to *Seabrook*—where the following exchange took place:

| | |
|---|---|
| The Court: | The objection is overruled. The jury here? |
| Courtroom Deputy: | They are, your Honor. |
| The Court: | Ok. Are you affiliated with any group sitting back there? |
| Mr. Richenthal: | That's a special agent with the FBI and the woman in front of him is an intern with the United States Attorney's Office. |
| The Court: | Well, I've got to put the jury there. I don't want anybody sitting with the jury. So come in front and sit probably over here on the side. |

ECF No. 55, 8:2-12. Defendant's counsel did not object to this direction when it was given; he was not surprised when the Court issued the same request at Defendant's retrial.

## CONCLUSION

For the reasons discussed, Defendant's motions for judgment of acquittal and for a new trial are DENIED in their entirety. Defendant's sentencing will proceed on Wednesday, January 21, 2015 at 3:30 p.m.

Dated: New York, New York
December 3, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge