UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ALBERT JAIRAM BALDEO,                          :
                                               :
                Petitioner,                    :
                                               :
        - against -                            :
                                               :
UNITED STATES OF AMERICA,                       :
                                               :
                Respondent.                    :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/26/18

**OPINION & ORDER**

13 Cr. 125 (PAC)
17 Civ. 1692 (PAC)

HONORABLE PAUL A. CROTTY, United States District Judge:

Petitioner Albert J. Baldeo ("Baldeo") instituted this 28 U.S.C. § 2255 petition to vacate and set aside his conviction and sentence on one count of conspiracy to obstruct justice and six counts of obstruction of justice.

The Government indicted Baldeo for attempting to defraud the City of New York to obtain public campaign matching funds.[1] Baldeo allegedly provided money orders or cash to individuals ("Straw Donors")[2] who then made contributions to Baldeo's campaign for New York City Council using Baldeo's funds purportedly in their own names, in violation of the New York City Campaign Finance Act. When the Government began its investigation, Baldeo allegedly intervened with the Straw Donors and threatened them to not cooperate with, and provide false information to, agents of the Federal Bureau of Investigation ("FBI") who were investigating contributions to the Baldeo campaign. ECF 17 ("Superseding Indictment")[3], ¶¶13–30. The Government charged Baldeo with conspiracy to commit mail and wire fraud for perpetrating this straw donor scheme (Count One), *id.* ¶¶1–8; mail fraud and attempted wire fraud (Counts Two

---

[1] The New York City Campaign Finance Board makes matching funds available for qualifying campaign contributions. In 2010, a City Council candidate could claim $6 for every $1 contributed for donation up to $87. Thus, a *bona fide* contribution of $87 would result in matching funds of $522. The donor must use her or his own funds to make a valid contribution.

[2] Straw Donors are contributors who use funds received from the candidate or another source, rather than their own.

[3] Unless noted otherwise, all ECF entries refer to those docketed under Case No. 13 Cr. 125.

and Three), *id.* ¶¶9–12; conspiracy to obstruct justice (Count Four), *id.* ¶¶13–18; and six counts of obstruction of justice (Counts Five through Ten), *id.* ¶¶19–30.

At trial, Baldeo admitted he provided Straw Donors with money orders along with false campaign contribution documents. But he did so, not with the intent to obtain public matching funds, as alleged in the indictment; but rather to avoid a penalty for not repaying by the election day his personal loan to his campaign committee. If not repaid, the loan would have been deemed a contribution in excess of campaign limits, exposing Baldeo to fine and penalty.

On August 11, 2014, after nine days of testimony and a day and a half of deliberations, the jury found Baldeo guilty on one count of conspiracy to obstruct justice and six counts of obstruction of justice; but acquitted him on one count of conspiracy to commit mail and wire fraud; and two counts of mail fraud and attempted wire fraud. ECF 87.

On October 10, 2014, Baldeo timely moved for a judgment of acquittal as a matter of law, pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33. Baldeo also claimed a structural violation of his Sixth Amendment right to public trial because the Court supposedly excluded the public from the courtroom during jury selection. ECF 124. The Court determined that the argument that "his Sixth Amendment right to a public trial was violated by the Court's 'effective exclusion' of the public during the *voire dire,* is a fiction, and a risible one at that." *United States v. Baldeo*, 2014 WL 6807833, at *5 (S.D.N.Y. Dec. 3, 2014).[4] The trial transcript conclusively demonstrated the falsity of his argument: the Court had asked the public to move to one place in the Courtroom so that the jury panel could be selected. In no instance did the Court exclude the public from the courtroom for any purpose. Accordingly, the Court denied Baldeo's Rule 29 and 33 motions; as

---

[4] The argument was so transparently false that Baldeo's retained trial counsel disassociated himself and his firm from these false arguments. *See* ECF 134.

well as Baldeo's motion for reconsideration. *Id.*; *Baldeo*, 2015 WL 252414 (S.D.N.Y. Jan. 5, 2015).

Baldeo then embarked on a haj of hospitals claiming a variety of spurious ailments to delay his sentencing. Eventually, on February 2, 2015, the Court sentenced Baldeo to 18 months of imprisonment and a two-year term of supervised release. ECF 153. Baldeo is still on supervised release.

On February 13, 2015, Baldeo moved for bail pending appeal "trot[ting] out the same tired arguments that were made before trial, during trial, and in voluminous post-trial motions." *See* ECF 155; 161. On March 5, 2015, the Court denied the motion, noting that Baldeo was a flight risk as evidenced by inexplicable "multiple self-hospitalizations ... attempt[ing] to evade and avoid his sentencing date." ECF 161 at 2. The Court found that Baldeo had "engaged in reprehensible conduct, threatening his former clients and friends in order to avoid the consequences of his own misconduct." *Id.* The serial abuse of his neighbors / constituents and his use of false charges against them with a variety of City enforcement agencies made Baldeo a danger to the community. Baldeo then moved for bail in the Second Circuit; on March 17, 2015, the motion was denied. *Baldeo*, Case No. 15-00286 (2d Cir.), Dkt. Nos. 14, 19. Two days later, Baldeo moved the Second Circuit for reconsideration, but the motion was denied again.

On appeal, Baldeo retained new, experienced appellate counsel and sought review of four issues:

1) Whether this Court gave "an erroneous, coercive, unanimity charge after the jury revealed that it was struggling with an 11 to 1 vote";

2) Whether there was "insufficient evidence of venue in the Southern District of New York on Counts 4, 5, 6, 8, 9, and 10"[5];

---

[5] Baldeo was running for City Council in Queens, which is in the Eastern District of New York. The City Campaign Finance Board and various City agencies that Baldeo misused are located in the Southern District of New York. While we are one city, we are in two Districts. Baldeo argued that his crime, if any, occurred in Queens in the

3) Whether there was "insufficient evidence of the element of 'corrupt persuasion' on Count Seven"; and

4) Whether this Court "err[ed] in denying Baldeo's motion for a new trial."

*See Baldeo*, Case No. 15-00286 (2d Cir.), Dkt. No. 26, at 1–2.

On August 26, 2015, the Second Circuit affirmed Baldeo's conviction and sentence, holding, in part, that the evidence of venue in the Southern District of New York ("SDNY") was sufficient for each of the six challenged counts because there was "evidence that Baldeo sought to impede grand jury proceedings that were subsequently instituted in the Southern District of New York by attempting to prevent potential witnesses from communicating with FBI agents from that district" about suspected federal offenses. *Baldeo*, 615 F. App'x 26, 27 (2d Cir. 2015). Accordingly, with respect to each count, there was sufficient evidence to prove by a preponderance of the evidence that venue was proper in SDNY where the official proceedings were instituted. *Id.* The Second Circuit also determined that Baldeo waived any challenge to the jury charge on venue by failing to raise it in his brief. *Baldeo*, 615 F. App'x at 27, n.1 ("Baldeo waived this issue by failing to argue in his briefs that the venue instructions were erroneous").

Baldeo sought an *en banc* hearing, Case No. 15-00286 (2d Cir.), Dkt. No. 50, but that was denied, *id.*, Dkt. No. 52. His petition for a Writ of *Certiorari* was also denied on March 7, 2016. *Baldeo v. United States*, 136 S. Ct. 1393 (mem) (2016). On March 7, 2017, one year to the day after denial of the *cert* petition, Baldeo filed this 28 U.S.C. § 2255 petition challenging his conviction and sentence. Consistent with his prior behavior, Baldeo sought to make use of this petition to stay a State disciplinary action pending against him. *See In the Matter of Albert Jairam Baldeo*, 2017 WL 4700212 (App Div. 2d Dep't Oct. 19, 2017).

---

Eastern District; the Government maintained that the fraudulent and obstructive conduct occurred in Manhattan in the Southern District.

Baldeo has shown minimal respect for the rule of law. He has attempted to thwart a federal investigation by threatening witnesses and encouraging them to lie to the FBI; evade his conviction by falsely accusing the Court of excluding the public from his trial; frustrate the Court's sentencing through inexplicable self-hospitalizations; and subvert the imposed sentence by seeking further delays through frivolous motions and appeals. This petition is no different. The petition is **DENIED**, as is the request for an evidentiary hearing.

## LEGAL STANDARD

28 U.S.C. § 2255(a) provides, in relevant part, that a prisoner:

> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A petition for relief under § 2255 faces a heavy burden: "a collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotations omitted).

Generally, "a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) (citation omitted). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent'." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted).

## DISCUSSION

Baldeo posits three reasons for the relief he seeks:

1) The jury charge on venue was impermissibly broad because, as the transcript of the jury charge shows, a comma and a word ("about") were missing;

2) Baldeo's trial attorney and his (different) appellate attorney failed to provide effective assistance of counsel; and

3) In rendering its decision denying Baldeo's direct appeal, the Court of Appeals improperly considered written jury instructions that were not part of the record on appeal.

## I.      The Court's Jury Instruction on Venue

Baldeo contends his conviction on obstruction of justice counts should be vacated because this Court unconstitutionally expanded the definition of venue in its jury charge. Case No. 17 Civ. 1692, ECF 5 ("Mem.") at 16–26. This contention is meritless.

### A.  Background

#### 1.  Relevant Law – Venue

Venue for obstruction of justice counts can be established in a district where "any part of the crime was committed." *United States v. Gonzalez*, 922 F.2d 1044, 1054 (2d Cir. 1991). It can also be established in a district where "the official proceeding (whether or not pending or about to be instituted) was intended to be affected." 18 U.S.C. § 1512(i); *see also Gonzalez*, 922 F.2d at 1054. The Government bears the burden of proving venue by a preponderance of the evidence. *Gonzalez*, 922 F.2d at 1056.

#### 2.  Relevant Facts – Written Jury Charge and Oral Jury Charge

During Baldeo's trial, the Court prepared a proposed jury charge and shared it with both parties for their review. *See* Trial Tr. at 1571:18–23. The Court conducted a jury charge conference, *see id.* at 1571–1625, and then prepared the final Written Jury Charge. *See* Case No.

17 Civ. 1692, ECF 21-1 ("Written Jury Charge"). The Written Jury Charge included a venue instruction that, for the obstruction of justice counts, provided: "the government may also demonstrate venue by proving that the defendant intended to affect an official proceeding, whether or not that proceeding was pending or about to be instituted, in this district." *Id.* at 46.

Consistent with its regular practice, the Court read the Written Jury Charge to the jury. *See* Trial Tr. at 1782–1847. Both parties, and Defendant Baldeo, as well as the Court's law clerk had copies of the Written Jury Charge; and they read along as the Court delivered the charge. *See, e.g., id.* at 1847:6–18. When the reading of the Written Jury Charge was completed, no one objected or asserted that any part of the Written Jury Charge, including the venue portion, had been misread. The Court then sent twelve copies of the Written Jury Charge into the jury room for use during deliberations. *See id.* at 1783:3–5; 1848:20–23.

The jury charge, as delivered, was transcribed by a court reporter. The transcript of the venue charge, which was never provided to the jury, reads: "the government may also demonstrate venue by proving that the defendant intended to affect an official proceeding, whether or not that proceeding was pending or to be instituted in this district." *Id.* at 1840:8–12. This transcription is, however, slightly different from the written venue instruction that the Court read: the transcription does not include a comma between words "instituted" and "in," and does not include the word "about" before "to be instituted."

**B. Discussion**

Baldeo argues the Court's jury instruction on venue was erroneous because the jury charge, as delivered, improperly permitted the jury "to find venue [in this district] 'whether or not' a proceeding was 'pending or *to be* instituted in this district.'" Mem. at 20 (emphasis in original). His argument principally rests on differences between the transcribed venue

instruction and the Written Jury Charge. These differences allegedly permitted the jury to find that venue was proper when it was not, and further that it was a structural error.

There are many problems with this argument. First, it stands perilously on transcription errors, which are herein corrected and removed. *See infra.* The corrected trial transcript eliminates all grounds for the argument. Second, it assumes that the jury saw the transcription errors in the trial transcript. The jury did not. Twelve copies of written jury instructions were sent into the jury room[6]; and the jury never asked for or saw the instructions as transcribed in the trial transcript. Third, to the extent that there were any error, the error was harmless.

### 1. Correction of Trial Transcript

As an initial matter, the Court grants the Government's request to correct the trial transcript to accurately reflect the venue instruction given to the jury. Case No. 17 Civ. 1692, ECF 21 ("Opp'n Mem.") at 21, n.2. Specifically, the Court corrects the trial transcript at 1840:8–12 (available at ECF 117), to read as follows:

> the government may also demonstrate venue by proving that the defendant intended to affect an official proceeding, whether or not that proceeding was pending or about to be instituted, in this district

An inaccurate trial transcript may be corrected. A certified court transcript is "deemed prima facie a correct statement of the testimony taken and proceedings had." 28 U.S.C. § 753(b). But it is not deemed sacred. 28 U.S.C. § 753(b) clearly implies that a certified transcript is merely "prima facie" correct, and that it can be corrected on the basis of contemporaneous documentation demonstrating that the transcript is not entirely accurate. *United States v. Carter*, 347 F.2d 220, 221 (2d Cir. 1965) (per curiam).

---

[6] *See* Trial Tr. at 1783:3–5 ("I am going to read to you the instructions, and I want you to know that I am going to send these instructions into the jury room so you don't have to take notes as you listen."), 1848:20–23 ("We are sending into the jury room … 12 copies of the jury charge.")

The Court determines that the transcript of Baldeo's trial is in fact inaccurate and should be corrected pursuant to Federal Rule of Criminal Procedure 36.[7] *See, e.g., Abatino v. United States*, 750 F.2d 1442, 1444 (9th Cir. 1985). Under that rule, "[a]fter giving any notice it considers appropriate, the court may at any time ... correct an error in the record arising from oversight or omission."

The Government already had appropriate notice; indeed, the Government requests the correction. *See* Opp'n Mem. at 21, n.2. Baldeo also had appropriate notice; he had a chance to respond to the Government's request for correction. *See* Case No. 17 Civ. 1692, ECF 24 ("Reply Mem.") at 2–3. Thus, the only remaining questions are (1) whether the omission of the comma and the word "about" is an error and, if so, (2) whether the error is due to "oversight or omission." The Court finds in the affirmative for both.

The omission of the comma and the word "about" is a transcription error because the Written Jury Charge conclusively demonstrates that the charge, as delivered, included the comma and the word "about". It is the practice of this Court to charge the jury by reading a written jury charge *verbatim.* Parties receive copies of the written jury charge in advance; and they read along as the Court charges the jury. Upon completion of the jury charge, parties are given an opportunity to object to the charge, as delivered, at which point parties are free to identify any discrepancies between the written jury charge and the charge, as delivered.

That is precisely what occurred at Baldeo's trial. The Court read the Written Jury Charge including the venue instruction, and the parties, including Petitioner Baldeo, read along. Once the jury was charged, the Court gave the parties and Petitioner Baldeo an opportunity to object to the charge, as delivered. The Government suggested that the charge on venue had not included an instruction on the burden of proof. Baldeo's counsel, however, correctly disagreed, proving

---

[7] Federal Rule of Appellate Procedure 10(e) may also be invoked.

convincingly that he had been listening attentively. But no one objected that the instruction on the method of establishing venue had not been delivered as written in the Written Jury Charge. *See* Trial Tr. at 1847:6–18. The lack of objection by anyone, not by Baldeo's counsel and not by Petitioner Baldeo himself, confirms that any difference between the Written Jury Charge and the trial transcript is due to a transcription error. *See United States v. DiPietro*, 2007 WL 2164262, at *1 (S.D.N.Y. 2007) (finding, under similar circumstances, that certified transcript was erroneous).

This transcription error is due to "omission" by a court reporter[8] of the comma and the word "about". Thus, Federal Rule of Criminal Procedure 36 provides the Court with the authority to correct the transcription error.

Baldeo appears to suggest that the Government cannot overcome the presumption that the transcript is correct unless it submits declarations of those that were present at trial. *See* Reply Mem. at 2, 3. Baldeo is wrong. The motion to correct a trial transcript can be granted based on circumstantial evidence that "there were at least nine lawyers-three prosecutors and six defense attorneys-present when the charge was read, but none objected to it." *United States v. Zichettello*, 208 F.3d 72, 96 (2d Cir. 2000); *see also DiPietro*, 2007 WL 2164262, at *1. The Government need not submit any sworn statements.

### 2. Jury Charge Was Not Erroneous

The Court has corrected the trial transcript to insert the allegedly missing comma and the word "about". *See supra*. Thus, the jury charge, as reflected in the corrected transcript, was not

---

[8] It is not at all clear that a court reporter is responsible for punctuation. A Judge giving a jury instruction does not state "comma", "period", "semi-colon" etc. Indeed, it is at best in the province of inference: a short pause may be a comma; a longer pause may be a period (with pauses being fractions of seconds). Nonetheless, the Court assumes that the court reporter is responsible for punctuation, which is said to have introduced part of the error.

erroneous and cannot have caused any constitutional injury. Besides, any challenge was waived by the failure to make timely objection at trial.

### 3. Any Error Was Harmless

Even if the venue instruction were erroneous, Baldeo would not be entitled to a new trial because any error was harmless. Errors in venue jury instruction are analyzed under the harmless error standard. *See, e.g., United States v. Rommy*, 506 F.3d 108, 111 (2d Cir. 2007). There is no case support for Baldeo's assertion that the error at issue should be treated as structural and should not be subject to the harmless error analysis. Even Baldeo admits that it does not fall into one of narrow categories of errors traditionally found to be structural. Mem. at 23. Baldeo, in effect, invites us to extend the law. The Court declines to do so.

Under the harmless error standard, the error at issue does not warrant a new trial because the error was harmless. During its deliberations, the jury had the Written Jury Charge with the correct venue instruction. The jury never saw the trial transcript, and hence the transcription error. "These safeguards mitigated any risk of confusion." *United States v. Rodriguez*, 651 F. App'x 44, 48 (2d Cir. 2016) (holding that jury charge error did not affect defendant's substantial rights because jury had written jury charge with the correct instruction during deliberations). Besides, there was abundant evidence to support venue in SDNY. *See Baldeo*, 615 F. App'x 26. Thus, any error in the venue instruction was harmless and does not warrant a new trial. *See United States v. Jenkins*, 510 F.2d 495, 498 (2d Cir. 1975) (given abundant "circumstantial evidence" of venue, any venue instruction error was harmless).

To the extent Baldeo argues that the charge, as transcribed, permitted the jury to find venue in SDNY for obstructive conduct anywhere in the United States, Baldeo is wrong. The jury was instructed to find venue in SDNY when either the obstructive conduct occurred here or the obstructive conduct interfered with a grand jury proceeding convened or about to be

convened here. Trial Tr. at 1840:2–13. Further, the jury was instructed that if it could not find venue in SDNY, it must acquit Baldeo. Trial Tr. at 1840:14–16 ("If you find that the government has failed to prove this venue requirement, then you must find Mr. Baldeo not guilty").

For these reasons, the Court rejects Baldeo's claim that he was constitutionally harmed by the Court's erroneous jury charge.

## II.    Ineffective Assistance of Counsel

Baldeo argues he was deprived of his Sixth Amendment right to effective assistance of counsel, both at trial and on appeal. Baldeo contends his trial counsel, Henry E. Mazurek ("Mazurek"), was ineffective because Mazurek: (1) failed to object to an erroneous venue instruction, Mem. at 29–30; (2) continued to represent Baldeo despite a conflict of interest, *id.* at 30–38; and (3) refused to allow Baldeo to testify on his own behalf, *id.* at 38–40. He also contends his appellate counsel, Susan Wolfe ("Wolfe"), was ineffective for failing to argue that the venue instruction was erroneous. *Id.* at 40–42. Baldeo's contentions are specious.

### A. Applicable Law

To state a claim of ineffective assistance of trial counsel, a petitioner must establish two elements: (1) counsel's representation was deficient and "fell below an objective standard of reasonableness" according to "prevailing professional norms"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The first element "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "There are countless ways to provide effective assistance in any given case." *Id.* The second element requires a showing "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome." *Id.* at 693.

The same *Strickland* standard applies to a review of appellate counsel's effectiveness. *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999).

### B. Mazurek's Assistance was Not Ineffective

#### 1. Failure to Object to Venue Instruction

Baldeo contends Mazurek was ineffective because he failed to object to the allegedly erroneous venue instruction. *See* Mem. at 29–30. The Court disagrees. As discussed above, the jury charge was not erroneous. *See supra* at 10. Mazurek therefore did not have any basis to object to the venue instruction; failure to object to it did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Even if the instruction were erroneous and the failure to object did comprise a deficient representation, Baldeo could not have been prejudiced because any error was harmless. *See supra* at 11. Accordingly, Baldeo has failed to establish that Mazurek was constitutionally ineffective for failing to object to the venue jury instruction.

#### 2. Conflict of Interest

Baldeo claims Mazurek was ineffective because he had two actual conflicts of interest that adversely affected the representation of Baldeo: (1) Mazurek was a potential fact witness for the Government on an incriminating fact; and (2) Mazurek was allegedly subject to a criminal investigation concerning his representation of Baldeo. Neither assertion is tenable.

#### a. Right to Conflict-Free Counsel

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002). There are three categories of attorney conflicts: "(1) *per se* conflicts; (2) actual conflicts; and (3) potential conflicts." *United States v. Gomez*, 644 F. Supp. 2d 362, 371 (S.D.N.Y. 2009). "A *per se* conflict is one so severe that reversal of a conviction is required, even absent a showing of prejudice." *Id.* An actual conflict arises "if during the course of the

13

representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Curshen v. United States*, 596 F. App'x 14, 16 (2d Cir. 2015) (internal quotations omitted). "To plausibly state an actual conflict of interest claim, a movant need only allege (1) an actual conflict of interest that (2) adversely affected his counsel's performance." *Id.* (internal quotations omitted). "A potential conflict exists where the interests of the defendant may place the attorney under inconsistent duties at some point in the future." *Gomez*, 644 F. Supp. 2d at 371 (internal quotations omitted). "[W]here a potential conflict exists, the Sixth Amendment is violated only if the conflict resulted in prejudice to the defendant." *Id.*

A defendant may waive the right to conflict-free counsel as long as the waiver is knowing and intelligent and the conflict is not so serious as to be unwaivable. *Schwarz*, 283 F.3d at 95. Once the right is validly waived, "the waiver cannot be defeated simply because the conflict subsequently affects counsel's performance." *Id.*

### b. Mazurek's Conflict as Potential Fact Witness

#### i. Relevant Facts

On July 17, 2014, at a pre-trial conference, the Court was notified that Mazurek had a potential conflict of interest with Baldeo. A prepaid phone that was not owned by anyone on the record was used to lodge at least one of the complaints made to a government agency against one of the Straw Donors, implicating one of the obstruction of justice counts. ECF 90 ("07/17/2014 Tr."), at 10:2–11:4. The Government intended to demonstrate that this phone was used by Baldeo, using phone records showing that the prepaid phone was also used to make two phone calls to Mazurek's law firm and personal cell phone. *Id.* This, according to the Government, raised "two related, but distinct concerns: first, that the Government might seek to call Mr. Mazurek and/or enter into evidence records containing his name, and second, that Mr. Mazurek

14

(and his co-counsel) may be limited in their ability to make certain arguments to the jury." ECF 73 ("July 22, 2014 Letter"), at 1.

The first concern was resolved by "enter[ing] into a factual stipulation that obviate[d] the need for Mr. Mazurek's testimony or the introduction of records containing his name." *Id.* at 1. The stipulation, which was entered into evidence, states:

> A cellphone with the number (347) 836-1285 the "1285 Phone"), certain records of which are marked as Government Exhibit 904, was used to call an attorney's office at (212) 922-1080 on May 20, 2011. Thereafter, on that same day, the 1285 Phone was used to call the same attorney's cell phone at (646) 294-4055. This attorney was the same attorney who later sent a letter to the U.S. Attorney's Office on June 3, 2011, informing it that ALBERT BALDEO had retained this attorney in connection with the U.S. Attorney's Office investigation of him arising from his 2010 campaign for City Council.

Case No. 17 Civ. 1692, ECF 21-3 ("GX 1206").

The second concern was resolved through Baldeo's waiver of right to conflict-free counsel. On July 23, 2014, the Court conducted a hearing, pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), to ensure that Baldeo's decision to enter into the stipulation, and to waive any conflict posed by the continued representation by Mazurek, was "knowing and intelligent." *United States v. Salvagno*, 343 F. App'x 702, 704 (2d Cir. 2009). After a lengthy colloquy with Baldeo, the Court concluded that Baldeo had "voluntarily agreed to the stipulation" and "knowingly and voluntarily waiv[ed] [the] right to" conflict-free representation. ECF 93 ("*Curcio* Tr.") at 14:20–22; 15:8–9.

### ii. Discussion

Baldeo claims Mazurek provided ineffective assistance of counsel because Mazurek had a conflict of interest, even after entering into the stipulation; the stipulation did not eliminate the possibility that Mazurek could be called as a Government's witness. Baldeo also argues his waiver of right to conflict-free counsel was improper because it was not knowing and voluntary.

The Court rejects the ineffective assistance of counsel claim for two reasons.

### 1) *Failure to establish cause-and-prejudice*

The Second Circuit held that "where the defendant is represented by new appellate counsel on direct appeal, and the ineffective assistance claim is based solely on the record developed at trial, the defendant is required to raise his claim on direct appeal." *Bloomer v. United States*, 162 F.3d, 187, 192 (2d Cir. 1998). "Failure to do so will subject him to the cause-and-prejudice test, if the claim is raised subsequently in a habeas petition." *Id.* Since Baldeo's ineffective assistance of counsel claim relies solely on the trial record, and he had new appellate counsel on direct appeal, he is required to establish the requisite cause-and-prejudice: "(1) that some objective factor external to the defense impeded [his] efforts to raise the [ineffective assistance of counsel] claim at an earlier proceeding, and (2) [that there was] actual prejudice resulting from" the alleged ineffective assistance. *Id.* at 191.

Baldeo has failed to establish both elements of the cause-and-prejudice test. The cause "must be something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original). Baldeo does not even allege, much less establish, such cause. Although such cause could be established by a claim for ineffective assistance of appellate counsel, Baldeo does not assert that Wolfe was ineffective for failing to raise the ineffective assistance of trial counsel claim. Further, Baldeo fails to establish any actual prejudice resulting from the purported ineffective assistance of Mazurek. For these reasons, Baldeo's ineffective assistance of trial counsel claim, based on Mazurek's conflict of interest as a potential witness, fails.

### 2) *Valid waiver*

Baldeo's claim also fails on the merits. Baldeo contends Mazurek's conflict of interest was "not cured by" the stipulation or his waiver. Mem. at 33–35. Baldeo is wrong.

16

### Stipulation

Baldeo contends the stipulation did not cure the conflict of interest because, theoretically, the stipulation did not prevent the Government from calling Mazurek as a witness. Mem. at 34. This is, however, irrelevant. To the extent any conflict of interest remained upon the entry of stipulation, any remaining conflict of interest was subsequently waived. *See infra*. Also, because the conflict was merely potential, as opposed to actual, Baldeo has to establish that he actually suffered prejudice from the conflict. *Strickland*, 466 U.S. at 694. But, as the Government aptly articulates, Baldeo "cannot possibly have been prejudiced by something the Government agreed not to do and did not do." Opp'n Mem. at 33.

### Waiver

Baldeo contends his waiver of the right to conflict-free counsel was not knowing, and therefore invalid, because he did not appreciate how the stipulation could affect his defense. Mem. at 34. But Baldeo waived his right acknowledging that he cannot "foresee all of the issues that might arise because of [Mazurek's] personal knowledge of facts." *Curcio* Tr. at 11:12–14.[9] He also understood the risk that his chosen counsel, Mazurek, could not make certain arguments related to the identity of the caller. *See id.* at 14:15–19. Such a valid waiver of right to conflict-free counsel "cannot be defeated simply because the conflict subsequently affects counsel's performance." *Schwarz*, 283 F.3d at 95.

---

[9] The *Curcio* hearing transcript states, in relevant part:

> THE COURT: As we sit here today, Mr. Baldeo, for reasons which I think are pretty apparent in light of the events of the last couple of days, it's almost impossible for us to foresee all of the issues that might arise because of your attorneys' personal knowledge of facts. Do you agree that it's impossible to foresee all of the things that might take place?

> THE DEFENDANT: Indeed, your Honor.

*Id.* at 11:10-17.

Baldeo also claims the waiver was not voluntary because he was forced to choose between (1) waiving his right and (2) losing the attorney of his choice and incurring substantial expense on new counsel. Mem. at 34. This argument again belies what Baldeo said under oath. At the *Curcio* hearing, when the Court asked "[a]re you knowingly and voluntarily waiving your right to such representation?," Baldeo responded, "Yes, your Honor." *Curcio* Tr. at 14:20-22.

"Whether a waiver is knowing and intelligent depends on the circumstances of each individual case as well as the background and experience of the accused." *United States v. Blau*, 159 F.3d 68, 74 (2d Cir. 1998). Baldeo is a practicing attorney. It is inconceivable that he waived his rights involuntarily, without fully appreciating the consequences. The Court determines Baldeo knowingly, intelligently, and voluntarily waived his right to conflict-free counsel, and rejects the claim that Mazurek was ineffective.

### c. Mazurek's Conflict Due To Government Investigation

Baldeo claims Mazurek had a *per se* conflict of interest arising from the Government's investigation of Mazurek's conduct during the district court proceeding. Mem. at 35 *et seq.*; Reply Mem. at 13. Not so.

The investigation did not create any conflict because there was no investigation of Mazurek. Before trial, the Government became aware that a private investigator for Baldeo might have inaccurately represented to a potential witness that the investigator was a federal law enforcement officer. Opp'n Mem. at 35; Case No. 17 Civ. 1692, ECF 21-4 ("Mazurek Decl."), ¶9. The Government raised this issue with Mazurek, but it thereafter dealt with the investigator's counsel, not Mazurek, before concluding that nothing illegal occurred. Opp'n Mem. at 35; Mazurek Decl., ¶¶9-10.

Baldeo argues that even if the investigation did not specifically target Mazurek, the investigation still created a conflict because it targeted Mazurek's agent. Reply Mem. at 11.

Baldeo does not cite any case law for such a proposition. Nor does he provide any cogent explanation regarding how the investigation created a conflict. Mazurek was not under investigation; and so he did not have any motivation to temper his defense of Baldeo to "curry favor with the prosecution." *United States v. Levy*, 25 F.3d 146, 156 (2d Cir. 1994).

Even if there were any conflict between Mazurek and Baldeo, the conflict could not have been *per se*, as Baldeo contends. Reply Mem. at 13. A *per se* conflict occurs only: (1) when the attorney is not authorized to practice law or (2) the attorney is implicated in the "same or closely related criminal conduct for which the defendant is on trial." *Gomez*, 644 F. Supp. 2d at 371. The Government investigation here was focused on the private investigator's interview of a potential witness. That had nothing to do with the "conduct for which [Baldeo was] on trial." *Id.* Any conflict of interest created therefore could not have been *per se*; it was at most actual.

And Baldeo has failed to properly allege an actual conflict of interest claim. To lodge an actual conflict of interest claim, Baldeo must allege "(1) an actual conflict of interest that (2) adversely affected his counsel's performance." *Curshen*, 596 F. App'x at 16. Although Baldeo argues there was a conflict, Baldeo has failed to establish how that conflict adversely affected Mazurek's performance. With no reason to question Mazurek's performance and weak evidence of any conflict, the Court rejects Baldeo's conflict of interest claim.

### 3. Refusal to Allow Baldeo to Testify

Baldeo contends Mazurek provided ineffective assistance of counsel because Mazurek refused to allow him to testify. Mem. at 38–40. He allegedly told Mazurek that he wanted to tell his side of the story, but Mazurek refused to let him do so. Baldeo Decl., ¶¶3, 4. Mazurek has no memory of ever telling Baldeo that he could not testify. Mazurek Decl., ¶¶5, 6. He also does not recall Baldeo ever protesting the decision that he not testify. *Id.* ¶6.

But even if Mazurek did refuse to let Baldeo testify, Baldeo still has not alleged a viable ineffective assistance of counsel claim because he has failed to allege any prejudice: that "there is a reasonable probability that, but for [Mazurek's refusal], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Baldeo argues the prejudice he suffered is "manifest" because his testimony "would have provided an alternative perspective on the interactions he had with the straw donors, and the motivations behind them." *See* Mem. at 39. He contends that the weight of witness testimony depended greatly on credibility, and Baldeo's testimony would have allowed a more balanced assessment of the witness accounts. *Id.*

The Court disagrees. The Court cannot fathom how Baldeo's proposed testimony, such as "I was not a career politician by any means," "my motivation for running for office was to help my community," "I did not make any phone calls to Mr. Mazurek or his office using the phone number referenced in" the Stipulation, would have changed anything. Baldeo Decl., ¶¶5, 6. The Straw Donors presented strong, devastating evidence of Baldeo's obstructive conduct. *See Baldeo*, 2014 WL 6807833, at *1–2. Simplistic explanations by Baldeo would not have made any difference. Baldeo's taking the stand may have led to the jury's conclusion that he was an unscrupulous manipulator and maneuverer who would say or do anything to advance his own cause or to protect himself at the Straw Donors' expense. The Court thus rejects Baldeo's ineffective assistance of counsel claim based on Mazurek's alleged refusal.

### C. Wolfe's Assistance was Not Ineffective

Baldeo claims his appellate counsel, Wolfe, was ineffective for failing to argue that the venue instruction was erroneous. Mem. at 40–42. The Court rejects the claim for reasons substantially similar to those provided in denying the ineffective assistance claim against Mazurek for failing to object to the venue jury instruction. *See supra* at 13. To recapitulate, (1) the venue instruction was not erroneous; and (2) even if it were erroneous, any error was

harmless. Accordingly, it was certainly not unreasonable to forgo of the venue jury instruction challenge and focus the appeal on other issues. Further, Baldeo can show no prejudice.

For these reasons, the Court rejects the claim that his appellate counsel was ineffective.

## III.    Deprivation of Due Process on Appeal

On appeal, during the oral argument, a member of the panel remarked on the propriety of the transcribed venue instruction. Mem. at 52. Although that issue was not on appeal, the Government addressed any concerns by submitting the Written Jury Charge—the jury charge that the Court read from—to the panel, on Baldeo's consent. Opp'n Mem. at 43. Ultimately, the Second Circuit did not consider the venue instruction issue as it found that the issue was waived. *Baldeo*, 615 F. App'x at 27, n.1.

Baldeo claims he was deprived of his due process rights when the Second Circuit considered the Written Jury Charge because it was not part of the appellate record. Not so.

It is unusual for a District Court to review a Circuit Court, but there could not have been any error in what the Second Circuit did. The Second Circuit certainly has the power to consider a document outside of the initial record on appeal, especially on consent of both parties. Further, the Second Circuit did not actually consider or rely on the Written Jury Charge. It is difficult to fathom how the Second Circuit's mere receipt of a District Court's document on consent of parties could result in any constitutional injury. Thus, the Court rejects Baldeo's claim that he was deprived of his due process rights on appeal.

## IV.    § 2255 Evidentiary Hearing

In his reply memorandum, Baldeo requests an evidentiary hearing on several issues. *See* Reply Mem. at 1, 3, 13, 16. Baldeo's request is DENIED.

In the context of a 2255 petition, courts have the discretion to determine whether a hearing is required. *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). Since the trial record is complete, the Court determines that an evidentiary hearing is not necessary.

## CONCLUSION

For the foregoing reasons, the Court denies Baldeo's Section 2255 petition and the request for an evidentiary hearing.

The Court orders the Court reporter to correct the trial transcript at 1840:8–12 (available at ECF 117) as follows:

> the government may also demonstrate venue by proving that the defendant intended to affect an official proceeding, whether or not that proceeding was pending or about to be instituted, in this district

The Clerk of Court is directed to terminate the petition and close the cases.

Dated: New York, New York
February 26, 2018

SO ORDERED

PAUL A. CROTTY
United States District Judge